NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3065

KAREN D. DANIELS,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

Karen D. Daniels, of Madison, Tennessee, pro se.

Devin A. Wolak, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Donald E. Kinner, Assistant Director.

Appealed from: Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3065

KAREN D. DANIELS,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

Petition for review of the Merit Systems Protection Board in AT-1221-06-1065-W-1.

_____

DECIDED:  May 7, 2008

_____

Before LOURIE, BRYSON, and GAJARSA, Circuit Judges.

PER CURIAM

## DECISION

Karen D. Daniels appeals from the final decision of the Merit Systems Protection Board (the "Board") affirming her removal from her position as an Information Technology Specialist (Customer Support).  Daniels v. Dep't of Veterans Affairs, AT-1221-06-1065-W-1 (M.S.P.B. Sept. 19, 2007).  Because Daniels fails to identify any reversible error, we affirm.

BACKGROUND

Daniels was a member of the United States Army Reserve in 1996. At that time, she was granted a security clearance on the condition that she avoid financial difficulties—similar to those she had encountered in the past involving the accumulation of unmanageable debt loans. In 1999, however, Daniels accumulated over $2,700 of debt on her Government-issued credit card, which was subsequently written off as a bad debt for non-payment. Daniels v. Dep't of Veterans Affairs, AT-1221-06-1065-W-1, at 4 (M.S.P.B. Dec. 11, 2006) ("Initial Decision"). In early 2000, Daniels' supervisor, Major Bernard Johnson, advised Daniels that she should pay the delinquent balance in order to avoid indefinite suspension of her security clearance. Daniels failed to pay the balance and her security clearance was revoked and indefinitely suspended. Id. at 4-5.

On August 27, 2000, Daniels began employment at the Nashville, Tennessee Veterans Affairs ("VA" or "agency") Regional Office ("VARO"). She was required to complete a new employee background investigation, which included completing Standard Form 85P, Questionnaire for Public Trust Position ("SF-85P"). Notably, Daniels responded "no" to the following two questions:

18b: To your knowledge, have you ever had a clearance or access authorization denied, suspended, revoked, or have you ever been debarred from government employment?

22b: Are you now over 180 days delinquent on any loan or financial obligation? Include loans or obligations funded or guaranteed by the Federal Government.

In April 2000, the initial background investigation was completed. The investigation revealed certain discrepancies with regard to her educational background, as well as her history of financial difficulties. The VARO Director only addressed the education

2008-3065

-2-

issue with Daniels. No final adjudication was made with regard to either issue and Daniels continued to work at VARO.

In March 2002, a higher-level background investigation was conducted by the Office of Personnel Management ("OPM") on all employees within the Information Resource Management ("IRM") section, which included Daniels. Daniels was required to complete a second SF-85P and again responded in the negative to questions 18b and 22b. The OPM investigation revealed that Daniels inaccurately responded to Question 18b in light of the suspension and revocation of her security clearance while she was in the Army Reserve. Based on the investigation results, the VA Office of Security and Law Enforcement ("OSLE") requested a suitability determination from the Nashville VARO concerning Daniels' continued employment.

In October 2003, the Nashville VARO Director, Brian Corley, requested a fuller investigation into the matter by the Office of Inspector General ("OIG"). The OIG confirmed the OPM's conclusion regarding Daniels' answer to Question 18b and further found that Daniels provided an inaccurate response to Question 22b. Corley thus recommended to OSLE that Daniels "be found unsuitable for continued employment with the Department of Veterans Affairs" in light of her false answers, which "have enormous adverse impact on her trustworthiness."

In June 2006, the agency issued a Notice of Proposed Removal ("NPR"), charging Daniels with "failure to provide accurate information on Questionnaire for Public Trust Positions, SF-85P." The NPR included four specifications which related to the inaccurate answers she provided on the SF-85P in 2000 and 2002. Daniels

responded to the NPR, but was ultimately removed from her position. Daniels appealed to the Board.

Prior to her appeal to the Board, Daniels had also filed an Office of Special Counsel ("OSC") complaint which challenged the agency's failure to reclassify her position and the proposed removal, as well as a complaint to the Equal Employment Opportunity ("EEO") Commission against certain agency officials, including her current and former supervisors. Daniels alleged "that she was discriminated against and harassed due to race and reprisal." With regard to her reprisal claim, Daniels alleged that she had engaged in whistleblowing activity that related to the disclosure of security violations purportedly committed by employees at VARO, including, for example, unauthorized access and use of data and information systems, password sharing, and falsification of security reports. The EEO office concluded that Daniels failed to establish that she was the subject of discrimination and harassment.

The Administrative Judge ("AJ") sustained Daniels' removal from the VARO. In doing so, the AJ determined that the agency met its burden of showing that Daniels provided incorrect information on her Questionnaire for Public Trust Positions, SF-85P, with regard to her security clearance and indebtedness. The AJ further found that Daniels failed to show that her removal was based on reprisal based on the EEO and OSC complaints she had previously filed. The AJ determined that even if Daniels' disclosures had constituted protected whistleblowing activities, the agency proved by clear and convincing evidence that it would have taken the same action in the absence of such protected activity. Lastly, the AJ found that Daniels failed to prove her

affirmative defense of prohibited discrimination and that removal was a reasonable penalty.

Daniels appealed the AJ's decision to the full Board, which denied her petition for review, thereby rendering the AJ's decision final. See 5 C.F.R. § 1201.113. Daniels timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000); see Briggs v. Merit Sys. Prot. Bd., 331 F.3d 1307, 1311 (Fed. Cir. 2003).

On appeal, Daniels primarily raises three main arguments. First, Daniels asserts that the AJ made various errors of law and fact in concluding that specifications one to four, which related to her inaccurate answers on the SF-85P, were sustained. Second, Daniels argues that the AJ erred in his analysis of whistleblower reprisal. Third, Daniels challenges the AJ's conclusion that the penalty of removal was reasonable.

In response, the government argues that substantial evidence supports the AJ's conclusion that Daniels failed to provide correct information to Questions 18b and 22b on the SF-85P. The government further argues that the AJ did not abuse his discretion in concluding that the agency would have removed Daniels from her position even in the absence of the alleged retaliation, and thus that Daniels' defense of whistleblower

reprisal was properly rejected. The government also asserts that the penalty of removal was reasonable.

We agree with the government. With regard to Daniels' first argument, all four specifications that were sustained were supported by substantial evidence. The record showed that Daniels was issued a security clearance in 1996, which was ultimately suspended and revoked after she accumulated over $2,700 in credit card debt. Nonetheless, Daniels answered "no" to Questions 18b and 22b, which specifically asked whether she ever had a clearance revoked or suspended and whether she was delinquent on any loan. In reaching his conclusion, the AJ rested heavily on credibility determinations of Daniels and various agency witnesses. Daniels' challenge on appeal largely amounts to her disagreement with the AJ's factfindings, which is insufficient to demonstrate reversible error. Moreover, we are not persuaded by Daniels' argument that the specifications should not be sustained because she misinterpreted the questions. That argument was considered by the AJ and soundly rejected. Initial Decision at 11-12. Because Daniels fails to show clearly erroneous factfindings or errors of law, we conclude that the AJ properly sustained specifications one to four.

Second, we are not persuaded by Daniels' argument that the AJ erred in his analysis of whistleblower reprisal. Daniels argues that her dismissal was a reprisal because she disclosed purported security violations occurring at VARO. In order to prove a claim of reprisal, "the proponent must show that (1) a protected disclosure was made; (2) the accused official knew of the claimant's disclosure; (3) the adverse action under review could, under the circumstances, have been retaliation; and (4) after careful balancing of the intensity of their motive against the gravity of the misconduct, a nexus

is established between the adverse action and the motive." Stanek v. Dep't of Transp., 805 F.2d 1572, 1570-80 (Fed. Cir. 1986).

Here, after finding that Daniels' disclosure of purported security violations constituted protected activities, the AJ concluded that Daniels failed to show a genuine nexus between the adverse employment action and any motive to retaliate. The AJ found that the agency would have removed Daniels even in the absence of the alleged retaliation. Initial Decision at 6-7. That conclusion is supported by substantial evidence in the record. Daniels' position at the VARO was characterized as "critical-sensitive," such that it required trustworthiness, security clearance, and an additional background investigation. Id. at 8. The AJ concluded that Daniels' failure to disclose accurate facts on her SF-85P "directly undermined her employment relationship and demonstrated her untrustworthiness in a very sensitive position," and thus rejected Daniels' affirmative defense of reprisal. We discern no error in this analysis.

Lastly, in reviewing the reasonableness of the penalty, our review is "highly deferential." Webster v. Dep't of Army, 911 F.2d 679, 685 (Fed. Cir. 1990). Moreover, "[i]t is well-established that selecting the penalty for employee misconduct is left to the agency's discretion." Id. Here, the AJ found that the inaccurate information provided by Daniels "undermined the agency's confidence in [Daniels'] trustworthiness which was critical to her successful performance of her position which required access to sensitive and confidential computer information regarding both patients and employees." Initial Decision at 11. Thus, according to the AJ, removal was "within the bounds of reasonableness and promotes the efficiency of the service." We find no error in the AJ's ruling.

2008-3065

We have considered Daniels' remaining arguments and find them unpersuasive. Accordingly, because we find the Board's conclusion to be supported by substantial evidence and not contrary to law, we <u>affirm</u>.

COSTS

No costs.